## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**HORIZON MEDICAL GROUP, INC.**

**Plaintiff,**

**vs.**                                                            **Case No. 8:06-CV-1625-T-27MAP**

**REID J. LANDRY,**

**Defendant.**

_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 6) and Plaintiff's Response (Dkt. 26). After careful consideration of the briefs and affidavits filed and after hearing oral argument from counsel on November 9, 2006, Defendant's motion to dismiss for lack of personal jurisdiction is **GRANTED**.

Horizon Medical Group, Inc. ("Plaintiff") is engaged in the business of diagnostic imaging, including MRI, sonogram and related medical applications. (Dkt. 26, Michael Lacenere Aff., p. 2).[1] Horizon MRI of Ducanville, L.L.C ("Horizon MRI") is a subsidiary of Plaintiff. Horizon MRI is located in Duncanville, Texas. (Dkt. 15, David Branch Aff., p. 1).[2] Plaintiff's headquarters are located in Sarasota Florida. (Dkt. 26, Lacenere Aff., p. 2; Dkt. 26, Kirsten Waligora Aff., p. 2).[3]

Defendant was employed by Horizon MRI in Ducanville, Texas from December 2003 to July 31, 2006. (Dkt. 26, Lacenere Aff., pp. 1-2). Defendant is a resident of Texas. (Dkt. 24, Landry Aff.,

---

[1] Michael Lacenere was the vice president of Horizon Medical Group, Inc. during the relevant time period. (Dkt. 26, Lacenere Aff., p. 1).

[2] David C. Branch was the Chief Executive Officer of Horizon Medical Group, Inc. during the relevant time period. (Dkt. 15, Branch Aff., p. 1).

[3] Kirsten Waligora was the Executive Assistant of Horizon Medical Group, Inc. during the relevant time period. (Dkt. 26, Waligora Aff., p. 1).

1

p. 1). While employed by Horizon MRI, Defendant sold MRI and other medical imaging services

in and around the Duncanville, Texas area.  (Dkt. 24, Landry Aff., p. 1).

While employed with Horizon MRI, Defendant entered into four consecutive employment

agreements.  (Dkt. 26, Lacenere Aff., p. 2).  The relevant employment agreement was executed on

February 7, 2006 and contains the following relevant provisions:

> 6.1 <u>Non-competition</u>.  For so long as Employee is employed by Employer and
> continuing for a period of two (2) calendar years after the date of termination of said
> employment, Employee shall not, without prior written consent from Employer,
> directly or indirectly, enter into any business relationship with or have any business
> interest in any competitor of Center, patient of Center, or any other entity that
> adversely affects Center's business.

*  *  *

> 7.1 <u>Governing Law</u>. This Agreement shall be interpreted, construed, governed
> and enforced according to the internal laws of the State of Florida without regard to
> conflict or choice of laws of Florida or any other jurisdiction.  The parties hereto
> consent to the jurisdiction of Florida, and agree to venue in the event of litigation, in
> the state courts located in Sarasota, Florida or if in the federal courts, then in the
> federal district court presiding over Sarasota, Florida.

*  *  *

> 7.12 <u>Survival</u>. The respective rights and obligations of Employee and
> Employer under Article 5 and/or 6 shall survive the termination of this Agreement.

(Dkt. 6, Ex.1, pp. 6-7, 10).

According to Defendant, he received very little training while employed at Horizon MRI and

"virtually all" of the training was done in Texas by Texas personnel.  (Dkt. 29, Landry Aff., p. 1).

Defendant "rarely had any contact with Florida personnel." *Id.* He was subject to "relatively little

direct supervision . . . and the only people who supervised [his] work were based in Texas."  (Dkt.

29, Landry Aff., pp. 1-2).  Defendant reported to the Marketing Manager in Texas and all

communications with Florida officers were routed through the Texas Marketing Manager.  (Dkt. 29,

Landry Aff., pp. 1-2).

Defendant's paychecks were directly deposited into Defendant's Texas bank account from Plaintiff's office in Sarasota, Florida. (Dkt. 26, Lacenere Aff., p. 2; Dkt. 24, Landry Aff., p. 2). Plaintiff also sent Defendant bonus checks, insurance information, marketing brochures, monthly newsletters, and other "information pertaining to Defendant's employment" from its headquarters in Sarasota, Florida. (Dkt. 26, Lacenere Aff., p. 3).

In March and August 2004, Defendant traveled to Sarasota, Florida for marketers' meetings. (Dkt. 26, Waligora Aff., pp. 2-3). Plaintiff hosted the meetings for marketers as part of on-going training. (Dkt. 26, Waligora Aff., p. 2). Plaintiff paid for Defendant's travel and hotel costs. (Dkt. 26, Waligora Aff., p. 2). Prior to Defendant's departure, he received two emails regarding the trips from Kirsten Waligora in Sarasota, Florida. (Dkt. 26, Waligora Aff., Exs. 1, 3).

According to Defendant, both visits were short in duration (less than twenty four hours) and neither visit involved much business or training. (Dkt. 24, Landry Aff., p. 2). Defendant has had no other contacts with Florida since the two visits in 2004. (Dkt. 24, Landry Aff., p. 2). Defendant does not own property in Florida, does not maintain bank accounts in Florida, and is not registered to do business in Florida. (Dkt. 24, Landry Aff., p. 2).

Defendant resigned from Horizon MRI on July 31, 2006.[4] After Defendant left Horizon MRI, he began working for Plaintiff's competitor, Mdiagnostics. According to Horizon employee

---

[4] Prior to his resignation, Defendant claims he was terminated by Horizon MRI in June 2006 and then rehired later that same month. (Dkt. 24, Landry Aff., p. 1). According to Defendant, his employment after June 2006 was probationary and he did not sign a new employment agreement with Horizon MRI. (Dkt. 24, Landry Aff., p. 2). According to Plaintiff, Defendant was never fired, rather, he was placed on probation for disciplinary reasons in June 2006. (Dkt. 26, Lacenere Aff., p. 2; Dkt. 26, Ex. E, Keri Jo Botkin Aff., p. 2). In support of its position, Plaintiff submits the affidavit of Kristi Gingerich, Plaintiff's payroll manager, who avers that Landry was a continuous employee from December 2003 until July 31, 2006 and received paychecks without interruption throughout his employment. (Dkt. 26, Gingerich Aff., pp. 1-2). This factual discrepancy is not determinative, however. Regardless of Defendant's termination date, the non-compete clause remained in effect post-termination via the survival clause in § 7.12.

Janice Ray, Defendant solicited Plaintiff's clients and solicited Janice Ray to work for Mdiagnostics as a tech. (Dkt. 26, Ray Aff., p 2). Plaintiff claims Defendant breached the non-compete clause in his employment agreement and seeks compensatory damages and injunctive relief. (Dkt. 2). Defendant has moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim. (Dkt. 6).

### Applicable Standards

A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 626 (11th Cir. 1994). The plaintiff must establish a *prima facie* case of jurisdiction to survive a motion to dismiss. *Id.* A *prima facie* case may be established by presenting sufficient evidence to withstand a motion for directed verdict. *Id.* The facts alleged in the complaint are accepted as true, to the extent that they are not controverted by defendant. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). Where conflicts in the evidence exist, all reasonable inferences are drawn in favor of the plaintiff. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

A federal district court sitting in diversity must employ a two-part analysis to determine whether it has personal jurisdiction over a nonresident defendant. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1990). First, the district court must consider the jurisdictional question under the state long-arm statute. *Madara*, 916 F.2d at 1514. "If there is a basis for the assertion of personal jurisdiction under the state statute, [the Court must] next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial injustice." *Id.* (citations omitted). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Id.*

4

## Florida's Long Arm Statute

Plaintiff maintains that personal jurisdiction over Defendant exists pursuant to § 48.193(2),

*Fla. Stat.*[5] In relevant part, § 48.193(2) provides:

> (2) A defendant who is engaged in substantial and not isolated activity within this
> state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to
> the jurisdiction of the courts of this state, whether or not the claim arises from that
> activity.

§ 48.193(2), *Fla. Stat.*

Florida courts have found "substantial and not isolated activity" to mean "continuous and

systematic general business contact" with Florida. *AutoNation v. Whitlock*, 276 F. Supp. 2d 1258,

1262 (S.D. Fla. 2003) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA

1999)). "This 'continuous and systematic contacts' requirement is sufficient to fulfill the

constitutional due process requirements of [the Due Process Clause]." *Whitlock*, 276 F. Supp. 2d

at 1263.

Here, Defendant's contacts with Florida consist of (1) two overnight trips to Sarasota in 2004

to attend brief training sessions and (2) transmission of general human resources and employment

information from Plaintiff's Sarasota headquarters to Defendant in Texas. Defendant's limited

contacts with Florida fall short of the purposeful and significant contacts found sufficient in other

cases to constitute systematic and continuous business contacts under § 48.193(2). *See e.g.*

*Nordmark Presentations, Inc. v. Harman*, 557 So. 2d 649, 650-51 (Fla. 2d DCA 1990) (continuous

and systematic contacts with Florida where defendant attended three business meetings in Florida

---

[5] As confirmed during oral argument, Plaintiff relies exclusively on § 48.193(2) to establish personal
jurisdiction over Defendant.

and Florida office provided defendant with proprietary information, trade secrets, managerial training and assistance, and directed and supervised defendant's day-to-day activities; Florida office also assisted defendant in carrying out his assigned duties, in solving problems and in providing technical and practical assistance and support); *Whitlock*, 276 F. Supp. 2d at 1263 (continuous and systematic contacts with Florida where defendant worked in Florida for six months, attended six business meetings in Florida and maintained ongoing business contacts with Florida office regarding his work, including communications regarding customer complaints, transmission of business information in the form of field bulletins, books, posters, peer performance reports, and transmission of Florida company's business systems and policies which defendant was to execute).

While Lacenere claims that Defendant regularly received information "pertaining to Defendant's employment" from Sarasota, his testimony indicates that those materials were largely if not exclusively administrative documents such as paychecks, bonus checks, and insurance information. There is no evidence that Defendant received proprietary information from Florida or that he was being supervised or directed by Florida personnel. To the contrary, "the only people who supervised [Defendant's] work were based in Texas" and "all communications with Florida officers were routed through the Marketing Manager for Texas." (Dkt. 29, Landry Aff., pp. 1-2). Defendant did not maintain any business contacts in Florida. He sold MRI and other medical imaging services exclusively in Texas. (Dkt. 24, Landry Aff., p. 1). Defendant's infrequent and fortuitous contacts with Plaintiff's headquarters, which happens to be located in Florida, are insufficient to subject Defendant to jurisdiction in Florida under § 48.193(2). *See Wallack v. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358, 1368 (M.D. Fla. 2003) ("[r]andom, attenuated, or fortuitous contact initiated by a Florida plaintiff does not satisfy the minimum contacts requirement") (citing *Sun Bank,*

*N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1034 (11th Cir. 1991)).[6]

The existence of a valid forum selection clause in Defendant's employment agreement does not change the analysis.[7] "Under Florida law, clauses conferring personal jurisdiction are insufficient to establish *in personam* jurisdiction, absent an independent basis for jurisdiction under the long arm statute." *Alexander Proudfoot Company World Headquarters L.P. v. Thayer*, 877 F.2d 912, 919-20 (11th Cir. 1989) (citing *McRae v. J.D./M.D., Inc.*, 511 So. 2d 540, 544 (Fla. 1987)); *see also Whitlock*, 276 F. Supp. 2d at 1263-64 ("contractual choice of forum clause designating Florida as the forum cannot serve as the sole basis for asserting *in personam* jurisdiction over an objecting, non-resident defendant"). Accordingly, "this court cannot merely rely on the contract [Defendant] signed that conferred personal jurisdiction and indicated venue, but instead must decide whether Florida can properly assert personal jurisdiction under the long arm statute." *Thayer*, 877 F.2d at 920.

As discussed, there is no "independent basis for jurisdiction under the long arm statute." *See Thayer*, 877 F.2d at 919-920. Defendant's limited contacts with Florida are insufficient to establish personal jurisdiction under § 48.193(2). *Compare, Desai Patel Sharma, Ltd. v. Don Bell Industries, Inc.*, 729 So. 2d 453, 454 (Fla. 5th DCA 1999) (recognizing that "in addition to the forum clause, there must be some independent basis for state jurisdiction in order to bring a nonresident into [Florida] court"; finding "additional basis" under § 48.193(1)(g) based on defendant's "breach of

---

[6] *See also, Addison Insurance Marketing, Inc. v. Evans*, 2002 WL 31059806 (N.D. Tex. 2002) (regular e-mail notifications, voice-mail messages, receipt of paychecks, and other administrative correspondence sent from the forum state (Texas) were insufficient contacts to establish specific jurisdiction where defendant sold insurance only within Pennsylvania, was supervised from Pennsylvania, and maintained no customers outside of Pennsylvania).

[7] For the purposes of determining personal jurisdiction, this Court will assume that the forum selection clause is enforceable. Defendant contests the validity of that clause.

7

contract in Florida by failing to make the required payments" in Florida).  Accordingly, neither the

existence of a forum selection clause nor Defendant's limited contacts with Florida are sufficient to

establish personal jurisdiction under § 48.193(2).

### Due Process - Minimum Contacts

Plaintiff has not established jurisdiction under Florida's long arm statute. It is unnecessary,

therefore, to determine whether jurisdiction over Defendant would offend the Due Process Clause

of the Fourteenth Amendment.  *See Madara*, 916 F.2d at 1514.  Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss for Lack of Personal

Jurisdiction (Dkt. 6) is **GRANTED**.  The Clerk is directed to close this case and terminate any

pending motions.

**DONE AND ORDERED** in chambers this _15th_ day of November, 2006.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

8